American Refractories Institute v. Commissioner.Am. Refractories Inst. v. Comm'rDocket No. 11825.United States Tax Court1947 Tax Ct. Memo LEXIS 12; 6 T.C.M. (CCH) 1302; T.C.M. (RIA) 47330; December 23, 1947*12 Stanley S. Waite, Esq., and Fred L. Kuhlmann, Esq., 408 Olive St., St. Louis, Mo., for the petitioner. Gene W. Reardon, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves income tax, declared value excess profits tax, and excess profits tax deficiencies and delinquency penalties as follows: DeficiencyDeclared ValueYearIncomeExcessExcess ProfitsEndedTaxProfits TaxTaxPenalty4-30-27$ 466.56$ 116.644-30-30114.3928.604-30-31140.8335.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.7318.7521.874-30-352,449.00881.18832.554-30-372,094.071,352.32861.604-30-391,019.061,048.62516.934-30-433,468.433,194.57$7,123.602,114.05$9,821.07$6,495.44$7,123.60$4,527.45The petitioner concedes the correctness of some of the adjustments made by the respondent in determining its gross income, but contends that it was a tax exempt business league within the meaning of section 101 (7) of the Internal Revenue Code during all of the years involved and therefore is not liable for the tax deficiencies or delinquency penalties*13 proposed in the deficiency notice. Findings of Fact The petitioner is a Pennsylvania corporation with its principal, and only, office located at St. Louis, Missouri. It filed returns for the taxable years involved with the collector of internal revenue for the first district of Missouri on July 21, 1943. The returns were filed at the request of the respondent and under protest. The petitioner was organized by a group of twenty-one individuals for the purpose, as stated in its articles of incorporation, "to afford a means of communication between individuals engaged in the production or use of refractories upon matters pertaining to their mutual interests, and for the encouragement and protection of trade and commerce in refractories." The certificate of incorporation further provides as follows: "7. This corporation shall have no capital stock; and membership therein shall not operate to vest in the members, or any of them, any individual or personal rights, title, interest or estate, in or to any of its real or personal property or assets. And no member of this corporation shall receive or be entitled to have or receive, any compensation for services rendered by him to it, *14 in the performance of the duties of membership. "8. The membership of this corporation shall consist of the subscribers hereto and their associates; the succession of membership in this corporation shall be maintained and any new members may be admitted in the manner provided for in the Constitution and By-Laws of the corporation. "9. This corporation shall have power to purchase, acquire, hold and transfer property, real and personal, within such limitations only as are or may be established by the laws of Pennsylvania; to make contracts and to enter into any and all obligations which are necessary to the transaction of its business and affairs; to appoint, hire and employ, and remove, such subordinate officers and such agents and servants as its business may require; to allow and pay suitable compensation to its officers, employees, agents and servants; to maintain and defend judicial proceedings, suits and actions at law or in equity; and to make and have and use a common seal, and alter such seal at its pleasure. "10. All members shall be required to pay annual dues in such amounts as shall from time to time be fixed by the By-Laws of the corporation. All dues, as well as*15 money derived from other sources, shall be applied to promoting the purposes for which this corporation is formed." The term "refractories" as herein used refers to heat-resisting materials pressed into brick and other forms for use in confining heat in industrial furnaces and boilers. The petitioner has no capital stock and no stockholders. It has a membership composed of active and associate members. The active members include those engaged in manufacturing or selling refractories or related products, such as high-temperature cements, plastic mortars, and castables. Anyone interested in refractories, such as a user of those products or a technical society, may become an associate member. At present the petitioner has eighty-four active members and twenty associate members. About ninety-five per cent of the active members are engaged in manufacturing or selling refractories. They produce about ninety or ninety-five per cent of all commercial refractories in the United States. The petitioner is controlled by a board of directors composed of active members selected by the active membership. Its employees consist of a president and a secretary and such stenographic and clerical*16 help as is needed from time to time. The petitioner is financed principally by dues collected from its members. The dues of the active members are determined on the basis of each member's gross sales of refractories during the preceding calendar year. For example, the dues for the petitioner's fiscal year ended April 30, 1943, were assessed at the rate of one-tenth of 1 per cent of gross sales for the year ended December 31, 1942. The associate members all paid dues of $25 per year. The total amount of dues to be assessed each year is determined in accordance with a budget which is prepared at the beginning of the year. If there is either a deficit or surplus at the end of the year it is taken into account in fixing the amount of dues for the next succeeding year. Some of the excess of dues over expenses has been retained as a reserve for contingencies but none has ever been refunded or distributed to the members. The services which the petitioner renders its members are numerous and varied. It subscribes to and digests reporting services and other publications of interest to the members and prepares bulletins for distributing to them the information so gained. It consults with*17 various departments and bureaus of the United States Government on matters such as reciprocal trade agreements and tariffs affecting the import or export of refractories; appears before the Interstate Commerce Commission and other ratemaking bodies; and issues used equipment bulletins from time to time in which it lists equipment for sale by, or wanted by, its members. It publishes and distributes a directory of the refractories industry. During the war the petitioner acted as a liaison between the refractories industry and various Government agencies, such as War Production Board, Office of Price Administration, War Manpower Commission, and Selective Service. Previously it had cooperated with the National Recovery Administration in establishing a code of fair trade practices for the industry. The petitioner received no remuneration for any of these services, except that in some instances it collected a nominal sum to cover the additional cost of publications or other expenses incident to the dissemination of information to its members. It has never performed any services to its members or others for profit. During all the years under review the petitioner has maintained a fellowship*18 at the Mellon Institute of Industrial Research, Pittsburgh, Pennsylvania, hereinafter referred to as the "Institute" in the name of "American Refractories Institute Industrial Fellowship No. 125-26." The petitioner and the Institute enter into a written contract each year under which the Institute agrees to conduct scientific research and make tests relating to refractories upon requests of petitioner's members. The petitioner pays the Institute a stipulated "foundation sum" intended to cover the cost of such work. When the expenses of the fellowship exceed the foundation sum, as is generally the case, the Institute bills the petitioner monthly for such excess. In the 1942 contract the foundation sum was fixed at $15,000. Since 1937 the petitioner has paid the Institute $6,000 a year for "additional research" under a supplemental contract. All of these payments to the Institute are made out of the dues collected from petitioner's members. The Institute bills the members individually for the work done for them and the members forward the bill to the petitioner for entry in its account with the Institute. All of the data and information gained by the Institute in its research work under*19 its contract with the petitioner are made available to all of petitioner's members and, through publications of the Institute, to the public generally. Only matters of interest to the industry as a whole are considered. The Institute itself is a nonprofit, tax-exempt corporation. It conducts about eighty fellowships such as that sponsored by the petitioner, covering almost every field of industrial scientific research. There are about seven persons regularly employed by the Institute in connection with the petitioner's fellowship. The petitioner does not itself conduct any scientific research or make any tests. It derives no income from its contacts with the Institute. As a result of its research on behalf of the petitioner the Institute has obtained three patents relating to the manufacture or use of refractories. These patents were issued in the name of the fellows who discovered the new product or process and were assigned to the petitioner without consideration. The petitioner has made them available to all of its members without cost. It has never sold, assigned or licensed any of them. At sometime prior to, or about, 1930, the Institute developed a new type of pyrometric*20 furnace which one of petitioner's members manufactures under an agreement with the petitioner whereby it pays the petitioner a commission on sales of the furnace. Over a period of fifteen years prior to 1946 the petitioner received commissions of $1,500. These commissions were intended to offset the additional cost to the Institute, and to the petitioner, of developing the furnace. The petitioner also receives from time to time a small amount of interest on its bank balance. It has no other income. The petitioner is, and was during all of the years involved in this proceeding, a business league within the meaning of section 101 (7) of the Internal Revenue Code. Opinion LEMIRE, Judge: The essential facts here, as above set out, seem to us to bring the petitioner clearly within the category of taxexempt leagues. In Regulations 111, Sec. 29.101 (7)-1 the respondent has described a business league entitled to tax exemption under section 101 (7) as follows: "Sec. 29.101 (7)-1. Business Leagues, Chambers of Commerce, Real Estate Boards, and Boards of Trade. - A business league is an association of persons having some common business interest, the purpose of*21 which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league." The petitioner meets all of the requirements set out in the regulations. It was, during the years involved, an association of persons having a common interest in the manufacture and use of refractories. Its chief and only purpose was to promote that interest. It had no profit motive. It had no income of consequence from any source except dues collected from its members. It was not intended to, and in fact did not, engage in any business for profit. Both in its origin and in its actual operations the petitioner resembles*22 the organizations under consideration in Commissioner v. Chicago Graphic Arts Federation, Inc., 128 Fed. (2d) 424; and American Fishermen's Tuna Boat Association v. Rogan, 51 Fed. Supp. 933. Those organizations were held to be tax-exempt business leagues. The petitioner never made any distribution of profits to its members and never had any intention or means of doing so. In fact, under its plan of operation it could never have had any profits for distribution; since the excess of its receipts over expenses for any year was carried forward to reduce the dues of its members for the succeeding year. Under petitioner's certificate of incorporation "all dues, as well as money derived from other sources," had to be used for promoting the purposes for which the petitioner was formed. The petitioner had no power to engage in business for profit, or to accumulate or distribute earnings to its members. Our determination being that the petitioner is a tax-exempt business league, it is not necessary to consider the question of penalties. Decision will be entered for the petitioner.